In the Matter of the Probate of the Will of ANDERSON D. NELSON.

September 10, 1888.

**Will—Undue Influence.**—The fact that a person who had made two wills, dividing his property between his wife and his sister, within a few days after making the second, and after several days of very severe illness of which he died in a few hours, made another will revoking those made before, and leaving all his property to his wife, (no reason being apparent for the change in the disposition of his property,) is not, in the absence of any other evidence of undue influence, sufficient to require the issue of undue influence on the part of the wife to be submitted to the jury.

**Same—Evidence—Expert.**—The question whether a change in a testator's life-long purpose to provide for a sister, occurring upon his death-bed, and without apparent motive or reason, and unexplained, indicates any change in his intellect, is not one for the opinions of experts.

**Charge of Court—General Exception.**—An exception to the charge of the trial court *held* too general.  Divers unimportant exceptions disposed of.

Appeal from a judgment of the district court for Hennepin county, affirming a judgment of the probate court, admitting a will to probate.  The special issues mentioned in the opinion were tried before *Lochren,* J., and a jury.

*Flandrau, Squires & Cutcheon,* for appellants.

*Wilson & Lawrence,* for respondent.

GILFILLAN, C. J.   In January, 1886, the will of the late Col. Anderson D. Nelson was presented for probate in the probate court of Hennepin county.   The sister of deceased, Mrs. Matilda J. Stockton, and John M. Stockton, her husband, appeared and contested.   The

probate.court having allowed the will, the contestants appealed to the district court, where, after a trial before a jury, the allowance and order of the probate court was affirmed, and from the judgment of the district court the contestants appeal to this court.

For the purpose of trial in the district court, three issues were prepared: *First*, as to the actual due execution of the will; *second*, as to soundness of mind and competency.to make a will on the part of deceased at the time it purports to have been signed; *third*, as to whether deceased was induced or procured to sign the will by threats, fraud, or oppression, or by the use of any undue influence. After the evidence was all in, it being full and uncontradicted that deceased executed (in fact) the will, the court directed the jury to find on the first issue in the affirmative. No exception is made, and none could be, to that. As to the third issue, the court, being of opinion that there was no evidence to sustain a verdict in the affirmative upon it, directed the jury to find in the negative. The propriety of that direction is made one of the questions on this appeal. The second issue was fully submitted to the jury for them to find upon it; and they found that deceased was, at the time the will purports to have been signed, of sound and disposing mind and memory, and competent to make a will.

Upon a careful examination of the evidence in the case, we do not find any upon which a verdict that the deceased was induced to execute the will by threats, fraud, oppression, or undue influence would be permitted to stand. "That is undue influence which amounts to constraint; which substitutes the will of another for that of the testator. It may be either through threats or fraud; but, however exercised, it must, in order to avoid a will, destroy the free agency of the testator at the time when the instrument is made." · *Conley* v. *Nailor*, 118 U. S. 127, (6 Sup. Ct. Rep. 1001.) It is "a coercion produced by importunity, or by a silent resistless power which the strong will often exercise over the weak and infirm, and which could not be resisted, so that the motive was tantamount to force or fear." *Children's Aid Society* v. *Loveridge*, 70 N. Y. 387. These two quotations give as good an idea of what is not easily defined, "undue influence," as any we find. Merely urging considerations of gratitude, love, es-

teem, affection, or charity, so that the mind of the testator is left free
to act and arrive at its own conclusions, is legitimate.    These mo-
tives are entitled to their proper weight, and it is for the testator to
determine how far they shall influence him in disposing of his prop-
erty.    To make a case of undue influence, the will must express the
mind and intent of some one else, and not of the testator.    From the
nature of the case, the evidence of undue influence will generally be
mainly circumstantial.    It is not usually exercised openly, in the pres-
ence of others, so that it may be directly proved.    But the circum-
stances relied on to show it must be such as, taken all together, point
unmistakably to the fact that the mind of the testator was subjected
to that of some other person, so that the will is that of the latter, and
not of the former; mere ground of conjecture or guess is not enough.

In this case the only person as to whom there could be any pretext
for charging undue influence over the testator was proponent, the
wife of the testator.    The facts relied on are, stating them briefly,
these :    The testator, an officer in the army, lived to the age of 57
without being married.    In 1876 he married the proponent, then at
the age of 27.    The evidence indicates that their married life was
happy.    He had acquired considerable property, consisting mainly
of real estate lying in Minneapolis and near St. Paul.    He had al-
ways been very fond of his sister, Mrs. Stockton, and of her husband
and children, and for many years had been very generous towards
them, providing them from time to time with money to a large amount
in the aggregate, interesting himself in the education of the children,
and expressing an intention to provide for their future.    His affec-
tion for and interest in the welfare of his sister and her family,
and his intentions towards them, and with respect to the disposition
of his property after his death, may be summed up by stating the
facts that, within little more than a year and a half before his death,
he executed two wills, prior to that in contest; one, executed June
11, 1884, in which, after some unimportant bequests, he devised and
bequeathed one-half his real and personal property to his wife, and
the other half to Mrs. Stockton and her issue, the whole to go to her
or them in case his wife should die before he did; the will giving, as
the reason for so disposing of his property, that his wife will be amply

provided with pecuniary means from another source, while his sister, with her large family, was in much need of the help which he purposed extending to her. He executed another will at the house of Mrs. Stockton, in Kentucky, December 7, 1885, about 22 days before he died. This will was drawn with his own hand, and its provisions do not seem to have been disclosed to any one till after his death. By this will he devised to his wife a building in Minneapolis worth about $65,000; made a single bequest of his books; and directs the remainder of his property in Minneapolis and St. Paul to be sold, and the proceeds, with his money in bank, to be equally divided between his wife and Mrs. Stockton; all other of his effects to go to his wife. No reason is apparent for the very considerable change made by this will in the disposition of his property. Contestants do not suggest any mental infirmity or undue influence as affecting its validity; but, on the contrary, in their written objections to the later will, they set forth its execution, and allege it to be the last, and only valid, will of the testator. The will in contest was executed at Thomasville, Ga., December 29, 1885, the day before his death, and it leaves his entire property to his wife. He had been very sick of pleuro-pneumonia, at that place, continuously, since December 20th. The will was executed at 6 or half past 6 in the evening, and at about 4 the next morning he died.

The theory urged by the contestants is that, prior to his illness, his wife had acquired a controlling influence over him; that his illness weakened his mind and power of will to such extent that she, being in constant and almost exclusive attendance on him, took advantage of her influence over him, and of his weakness, physical and mental, to extort from him the execution of a will such as he would not otherwise have made. There is nothing in the evidence to indicate that she ever had any power to influence him beyond what naturally and rightfully belongs to a wife. Indeed, there is a notable lack of evidence showing their standing in that respect towards each other. There was no attempt to open out their domestic life prior to a few weeks before he died. There is no evidence tending to show that he was not a man of strong, independent will, or that he could be easily influenced by any one. There is evidence that his sight

and hearing, and perhaps his memory, were impaired, though not beyond what is common to men of his age. That his sickness weakened in any way his mind and power of will there was no evidence, except that of experts,—physicians who did not see him, but who testified that usually the disease of which he died, continuing so long as in his case, would have such effect on the brain and mind as to render the patient incapable of making a will. When the question is mental condition during such a disease, that sort of evidence is competent, and entitled to control, where no better can be had. But as against the ample, direct, and positive evidence of the attending physician, and all those who saw and conversed with the testator during his illness, and at the time of executing the will, to the effect that his mind was in no way impaired, the testimony of the experts was entitled to very little weight. On the issue of mental infirmity, the evidence barely justified its submission to the jury.

But the case is utterly barren of evidence tending to prove that Mrs. Nelson ever made any effort or attempt to influence the testator in disposing of his property. "It is not sufficient to show that a party benefited by a will had the motive and opportunity to exert such influence; there must be evidence that he did exert it." *Cudney* v. *Cudney*, 68 N. Y. 148. Not a word or act of hers proved could be construed into such an attempt. Her own testimony was to the effect that the year they were married he told her of a will he had made; but that never after that did they have any conversation with regard to the disposition of his property, until the day the contested will was executed. As to the conversation on that day, her testimony was that, when he was dictating to his friend Gen. Thom what disposition he wished to make of his property, she requested him to wait until he was well enough to attend to business matters, but he persisted. Nor is there any evidence tending to show that she ever tried to alienate him from contestants or their family. Upon the issue of undue influence, the case stands, then, solely on the facts that, having intended to provide for, and having executed prior wills making provision for, his sister and her family, he, within a few weeks, made another will, revoking in effect all others, and leaving all his property to his wife. That being so, it comes within

the principle affirmed in the case of *Storer's Will*, 28 Minn. 9, (8 N. W. Rep. 827,) in which it was held that inequality, however great, in the distribution of the testator's property among those naturally the objects of his bounty, is not, of itself, or even when accompanied with evidence tending to prove impaired mind and memory, evidence of undue influence on the part of those who seem to be favored by the will, though it may be shown in aid of other independent evidence of it. As was said in that case: "If it were evidence from which the jury might find undue influence to avoid the will, the issue practically presented to the jury in every case of the kind would be, is the will such as the jury, if in the testator's circumstances, would have made? Few wills could stand, if such were the test."

Upon the issue of mental capacity to make a will, the court, at the request of the proponent, gave to the jury seventeen different instructions, covering, with the court's modifications and explanations of them, more than four printed pages, containing various propositions of law, some of which, certainly, cannot be questioned, and are not questioned. To this the only exception was, "We except to the giving of the proponent's requests which were given by the court." We have so often held that an exception to a charge must be to some particular proposition stated by the court, and which must be pointed out so that the attention of the court will be specifically directed to the point, and that a general wholesale exception will be of no avail, that it is unnecessary for us to do more than refer to the rule, and say the exception is insufficient. We will, however, though unnecessary, go further, and say that, although the phraseology of two or three of the requests may be open to criticism, the explanations of the court accompanying them, and especially its summing up of the law, after giving the requests, are so full, and in so clear, precise, and accurate terms, that the jury could not have got any but a correct understanding of the rules of law applicable to such a case.

There were some exceptions upon the exclusion or admission of evidence, only two of which, however, deserve special notice. The contestants asked of several of their witnesses, physicians, the question, in substance, whether, in their opinion, the change of the testator's life-long purpose to provide for his sister, occurring upon his death-

bed, and being without apparent motive or reason, and otherwise altogether unexplained, would indicate any change in his intellect. We suppose the purpose of the question was to show a weakening of the intellect. It was not a question of the effect of physical disease on the mind. As to that the medical witnesses might and did answer. It was a question whether certain mental acts or operations indicated a strong or weak mind. Of that the jury were as competent judges as the most skilful physicians. It was not a matter of science. The question was correctly excluded. From the depositions of several of contestants' witnesses the court, on proponent's motion, struck out portions which contestants claim would show that, when the testator's remains were taken for burial to the place where contestants resided, and at the burial, proponent acted in an unbecoming manner, one showing animosity to contestants, and a desire to avoid them. Upon reading the evidence so struck out, we do not think that it would show what contestants claim for it; but, if it did, it could certainly have no bearing upon the testator's mental capacity, and it would not, with the evidence admitted, make a case for the jury on the issue of undue influence; so that, if admitted, it could not have helped their case.

Judgment affirmed.