THOMAS MANATT *et al.,* Proponents, Appellant, v. W. F. SCOTT, *et al.,* Contestants.

**Will Contest:** EVIDENCE. Evidence as to the value of the estate of a son of testatrix who died before either of his parents is admissible upon the question as to whether her will was reasonable or natural,—especially where the proponents had introduced the will of the husband of the testatrix, whom she survived, containing a recital that he had made ample provision for such son during life.

SAME. Where one of the grounds of objection to the probate of a will was that decedent, by reason of old age and infirmity, had insufficient capacity to make a will, and it was claimed she was suffering from *senile dementia,* testimony of a brother of decedent, with whom she had been on friendly terms, but which friendship suddenly terminated, that the cessation of friendliness was all on decedent's part, is admissible.

INCAPACITY. An instruction on testamentary incapacity is proper which states that it may exist although the person be not actually insane or of unsound mind and may arise from weakness of intellect produced by extreme age, disease or bodily infirmities, providing such weakness really disqualifies the testatrix from knowing or appreciating the nature, effects or consequences of her act.

*Evidence of.* An instruction in an action to set aside a will on the ground of testamentary incapacity and undue influence is proper, which authorizes the jury to take into consideration the provisions of the will "Whether just or unjust, whether reasonable and natural or unreasonable or unnatural as may be disclosed by the evidence."

*Rule applied.* Where testator left her property to well to-do relatives, to the exclusion of her natural heirs, evidence that she overlooked relatives of like relationship and a sister in abject poverty, is admissible as a circumstance to be considered with other evidence as showing a disordered mind or undue influence

SAME: *Declaration of Decedent.* In contesting the validity of a will on the ground of incapacity and undue influence, the admission of declarations by decedent before the execution of the will as to what devisees and proponents told her detrimental to contestants,

· although erroneous, is cured by an instruction that the declarations could not be considered for the purpose of proving that devisees made such statements. And such declarations were admissible, however, as bearing on decedent's capacity to make the will.

RULE APPLIED TO. Declarations by a testatrix that her daughter-in-law and children poisoned her husband and would poison her if she went to their homes, and that her brothers had so informed her.

SAME. Declarations of a testatrix that if it had not been for her daughter-in-law and children her husband would have been living are admissible in an action to set aside a will because of *senile dementia* although made long after the execution of the will, as tending to show that the disease if it existed was of long standing and progressive.

EVIDENCE. An inventory and final report of a testatrix as executrix of her husband's estate, executed by her but prepared by her brother, which failed to refer to a large amount of personal property included in the estate is admissible in evidence as tending to show that she was unaware of the extent of her property and to show that the brother concealed property from the court.

SAME. A sworn answer of testatrix to a suit brought against her on a contract, in which she alleged that she was very weak, unable to read or write or to transact business intelligently, is admissible in an action to set aside her will on the ground of mental incapacity, as bearing upon the condition of her mind.

HARMLESS ERROR. Excluding evidence as to who were present at the execution of certain receipts by a testatrix is not prejudical error where there was no dispute as to the execution of the receipts.

*Same.* In contesting the validity of a will, where *senile dementia* is charged, and proponents introduce evidence of commencement of a suit by contestants against decedent to explain her feelings against them, the admission of evidence of all the circumstances of the suit, the employment of the attorneys, and its dismissal as soon as all the facts were ascertained, although irrelevant, is harmless error.

HYPOTHETICAL QUESTIONS. A hypothetical question is proper where the evidence tends to establish the material facts included in it although such facts are not proved to exist.

*Same.* The question may cover several years before or after the execution of a will, where long standing, progressive mental disease is involved.

NON-EXPERTS. Where testator's mental capacity to make a will was in issue, a question put to a non-expert witness to state "any difference there was in decedent's actions or appearance, indicating

mental strength or weakness,.at the time you last saw her, compared with the first time," does not call for witness' opinion, without detailing the facts to the jury.

**Special Interrogatories.** Submitting interrogatories to the jury asking for facts material to be determined, although some of them were not ultimate, is not reversible error.

**Appeal.** The evidence rulings and exceptions will not be stricken from the abstract where the bill of exceptions contains the direction to the clerk to copy the shorthand reporter's report of the trial in full as extended, certified and signed by such reporter, because the clerk was not directed to copy the original notes.

**ASSIGNMENT OF ERRORS.** Under Code 1873. section 3207, providing that the assignment or error must, in a way as specific as the case will allow. point out the error objected to, an assignment which states that the court erred in overruling the objection to the question propounded to a named witness "as shown in the 30th exception, at the bottom of page 47 and top of page 48 of the abstract, and also in overruling the objection to the further questions propounded to the same witness as shown in page 48 of the abstract, and in permitting the witness to answer the same " is sufficient where, on the page mentioned, the exception bears the corresponding number.

**IDENTIFICATION.** Instructions are sufficiently identified in the bill of exceptions by referring to them as filed in the case by their numbers and as duly indorsed by the presiding judge,

**PRESUMPTIONS.** It will be presumed that the reporter and clerk performed their duty in preparing a record for appeal to the supreme court, in the absence of any showing to the contrary.

*Appeal from Poweshiek District Court.*—HON. BEN McCoy, Judge.

SATURDAY, OCTOBER 8, 1898.

ISSUES joined in the probate of will. Verdict and judgment for contestants and proponents appeal.—*Affirmed.*

*Haines & Lyman* and *W. R. Lewis* for appellants.

*John T. Scott* and *H. S. Winslow* for appellees.

LADD, J.—Wiliam Scott and Eliza, his wife, settled in Poweshiek county in 1849, and resided there until death. William died in 1886, and Eliza ten years later. They had

but two children, one of whom, William, died, unmarried, soon after the father. The other son, Robert, died in 1885, leaving, him surviving, his widow and five children, viz. William F., Robert D., Ina Belle, Mary, and Elizabeth Ann Scott. Mary Scott intermarried with L. Reynolds, and upon her death left, surviving, her husband and two children, Robert L. and Scott S. Reynolds. Elizabeth Ann intermarried with Ed. McGinley, and upon her death left, surviving, her husband and two children, Edward Earl and William McGinley. These granchildren and great-grandchildren of Eliza Scott are the contestants to the probating of her will. It may be added that in 1870 William Scott conveyed to his son Robert three hundred and twenty acres of land, and, by his will, left the remainder of his estate to his wife and son William. This consisted of three hundred and eight-four acres of land and a large amount of personal property, which fell to Eliza under the will and as heir of the son. In 1892 she formally executed a will, bequeathing to her brothers, James, Thomas, and Irvin Manatt and her sister Susannah Gwin all her household goods, beds, bedding, and clothing, "to be divided equally between them, share and share alike," and devising the remainder of her property, real and personal, to the three brothers named. The will also contains this provision: "*Second.* I give and bequeath to my grandchildren Robert L. Scott, Reynolds Scott, Eliza Ann Reynolds, Wm. T. Scott, Robert D. Scott, and Belle Scott fifty dollars each, share and share alike." The objections interposed to the admission of this paper to probate are that the deceased, by reason of old age and mental infirmities, had not sufficient capacity to make a will; that she did not comprehend and understand the extent of her property, or those who had claims upon her bounty; that the will was procured by fraud and undue influence exercised by the proponents; and, further, that the fraud and undue influence consisted of poisoning the mind of testatrix, and inducing her to believe that her legal heirs were her enemies, and were plotting to do her bodily harm.

The jury found, by their general verdict, and in answer to the special interrogatories, for the contestants. There are sixty-eight assignments of error, and we can be expected to consider in detail those only which seem of the most importance.

I. The motion of the appellees to strike all the evidence, rulings, and exceptions from the abstract is overruled. The practice of incorporating the shorthand notes in the skeleton bill of exceptions has been fully approved by this court. *Hampton v. Moorhead,* 62 Iowa, 91; *Waller v. Waller,* 76 Iowa, 513; *Hill v. Halloway,* 52 Iowa, 678; *Gardner v. Railway Co.,* 68 Iowa, 590; *McCarthy v. Watrous,* 69 Iowa, 264. These are presumed to have been filed in the case, as it was the duty of the reporter to file them. The bill recites that they were filed, and that all the evidence, motions, objections, and exceptions, "having been extended  *  *  *  and transcribed into longhand, and certified and filed in due time after such trial by such shorthand reporter, are as follows, to-wit: (Clerk will here copy shorthand reporter's report of the trial in full, as extended, certified, and signed by Blue, shorthand reporter.)" The objection seems to be that the clerk was not directed to copy the original notes. For what conceivable purpose would such a copy be made? None. Whatever the direction, he is expected to copy the transcript made by the reporter. It is said that he might be unable to identify it as that of the particular trial. If it is filed in that case, properly entitled and duly certified, the identification is ample. The appellants seem to lose sight in their arguments of the fact that the reporter is an officer of the court, and will not be presumed to foist an unauthorized transcript on the record. The skeleton bill of exceptions is necessarily imperfect, and its expediency lies in saving the record until time or necessity requires its completion. A translation of the notes may not be required, and, in any event, need not be made, in a suit at law, until necessary for the preparation of the abstract. *Kassing v. Ordway,* 100

Iowa, 612; *Slone v. Berlin,* 88 Iowa, 205. The presumption that the reporter and clerk performed their duties will prevail in the absence of any showing to the contrary, and the record prepared as directed treated as genuine.

II. The point that the instructions are not identified in the bill is not well taken. This was done by referring to them as filed in this case by their numbers, and as duly indorsed by the presiding judge. When so referred to, the clerk will find no difficulty in making the selection.

III. The appellees insist that assignments of error are not as specific as is required. The first fifty-two errors relate to the introduction of evidence. The twenty-sixth assignment is a fair illustration, of all, and is as follows: "The court erred in overruling the proponents' objection to the question propounded to the witness W. W. Woods, as shown in the thirtieth exception at the bottom of page 47 and top of page 48 of the abstract, and also erred in overruling the proponents' objection to the further question propounded to the same witness, as shown on page 48 of the abstract, and in permitting the witness to answer the same." It will be noticed the particular ruling is mentioned, as well as the witness, and the page of the abstract; and it may be added that at the bottom of that page the exception bears a corresponding number. The method pursued is certainly a very convenient one, and enables the court and counsel without loss of time to find, not only the ruling, but the connection in which it is made. It clearly and specifically indicates the very error complained of, and, in so doing, complies with the statute. Code, section 4136. In *Wood v. Whitton,* 66 Iowa, 297, the errors were not specifically mentioned or pointed out as found in any particular part of the record, and it is there said: "An assignment should plainly state the error complained of, and not refer the opposite counsel and court to parts of the record wherein the objection is said to appear." This language must be construed in connection with the alleged error in that case, and

which could only be discovered by the examination of the entire record. It has also been held that resort will not be had to the argument in order to determine the error assigned. *Calkins v. Railway Co.,* 92 Iowa, 715; *Smola v. McCaffrey,* 83 Iowa, 760. In *Stove Works v. Hammond,* 94 Iowa, 694, stating errors generally in ruling on the admissibility of the testimony of the witness named is held not sufficiently specific. In *Hamilton Buggy Co. v. Iowa Buggy Co.,* 88 Iowa, 367, it is said: "Each and all of these assignments relate to the admission of evidence against the objection of the intervener, and each assignment sufficiently points out the error, naming the witness, and specifying the evidence and rulings objected to. To require more would entail an unnecessary burden upon the appellants. While the law contemplates that such assignment shall clearly point out the error complained of, it is not necessary to incumber the record by setting out the whole examination in which the error is claimed to have occurred. *Union Bldg. Ass'n v. Rockford Ins. Co.,* 83 Iowa, 649." What is said in this case aptly applies to that at bar, and we not only hold the assignment sufficient, but approve the method of definitely pointing out the error and the part of the record where it may be found.

IV. William Manatt was asked this question: "You may state whether or not there was any cessation of friendliness on your part towards Mrs. Scott at that time, or was the ill-will all on her part,"—and over objection answered: "All on her part. The ill-will was all on her part." The time referred to was when she left the farm, in 1886. It is conceded that the feeling of the witness might be shown, but it is said that the ill-will of the decedent ought not to be inquired into. It may be mentioned that the contestants claimed Mrs. Scott was suffering from *senile dementia,* and, according to the evidence of physicians, this disease is of slow development, and one of the symptoms is a sudden aversion or dislike conceived against those with whom the person afflicted has been on friendly terms. We

think it was admissible as bearing upon the condition of Mrs. Scott's mind. She had been on friendly terms with this brother for years, and, as soon as taken from the farm by James and Thomas Manatt conceived a dislike for him. It was part of the history of the case, and one of the circumstances to be considered with others in determining whether she had testamentary capacity.

John Manatt testified that prior to the execution of the will, Mrs. Scott had said to him that her daughter-in-law and children gave her husband a dose, and helped him out of the world; that, if she went to their homes, they would treat her likewise; and that Thomas and James Manatt had so informed her. The proponents moved to strike out the statement that Thomas and James had told her, as incompetent, hearsay, immaterial, and as declarations made by the devisees under the will. This motion was overruled, and it is urged that the statement made by the deceased testatrix of declarations by devisees cannot be received in evidence against other devisees. The order of introduction of evidence was within the discretion of the court. While the statement that she based her belief on information derived from James and Thomas could not be received as proving that they in fact made such a report, it did have a tendency to show that her mind was controlled by undue influence. Had competent evidence been produced that James and Thomas had in fact so advised her, the importance of this evidence would be manifest. That is, not only the exertion of the influence, but its direct effect upon the mind would have been established. *In re Hess' Will,* 48 Minn. 504 (31 Am. St. Rep. 665), and extended note (s. c. 51 N. W. Rep. 614). Such evidence was, however, not adduced, and the court told the jury that her statement could not be considered as tending to show James and Thomas in fact so informed her. This instruction obviates the exception urged. The authorities relied upon by appellants are not in point. They simply relate to declarations made by a devisee before or after the

execution of a will. *In re Ames,* 51 Iowa, 596; *Dye v. Young,* 55 Iowa, 433; *Parsons v. Parsons,* 66 Iowa, 754; *In re Goldthorp's Estate,* 94 Iowa, 336. That declarations made by the testatrix are admissible as bearing on capacity and undue influence, is well settled. *Waterman v. Whitney,* 11 N. Y. 157; *Bates v. Bates,* 27 Iowa, 112; *Stephenson v. Stephenson,* 62 Iowa, 165; *In re Goldthorp's Estate, supra; Lane v. Moore,* 151 Mass. 87 (21 Am. St. Rep. 430, 23 N. E. Rep. 828); Schouler Wills, sections 193, 243. As said in *Bever v. Spangler,* 93 Iowa, 603: "Mental disturbance may be detected by declarations as surely as by conduct; hence the declarations of persons charged with insanity are admissible in a chain of logical connection, to show the mental condition existing when the will was executed." The evidence tended to show Mrs. Scott was then laboring under a delusion which of itself was a symptom of mental unsoundness.

V.   The appellants complain of the ruling of the court in admitting in evidence the inventory and final report of Mrs. Scott, as executrix of her husband's estate, filed in 1886 and 1887.   These were signed and sworn to by her, but prepared by or under the supervision of James Manatt. William Scott left nearly six thousand dollars in cash, which was placed in the bank by James and Thomas Manatt. Soon after his death, a large amount of personal property was disposed of, and the proceeds handled by the same parties. Neither the report nor the inventory contained any reference to these amounts, and the omission tends to show that she did not know the extent of her property at that time; and, further, that James Manatt, knowing thereof, concealed these from the court in reports prepared by him or under his supervision.   It may be said that this is remote in time, but the testatrix was then an aged woman, and the testimony tended to show that from that time on her property and business were managed and controlled by these proponents.   We think it was also admissible as bearing upon her knowledge of her business and property.   It is said that she may have given

away considerable amounts of money. This would not relieve her from making a truthful report and inventory. Besides, if this had been done, the knowledge of proponents of her affairs was such that they could readily have shown it.

VI. About three years after making the will, Mrs. Scott remarked to Eliza Breneman that, "if it had not been for that blackleg and them [referring to Dr. Reynolds, her daughter-in-law, and children] her husband would have been living this day." We have seen that declarations made by the deceased were admissible. But it is said that this was long after the execution of the will. The evidence tended to show, however, that the disease, if it existed, was of long standing and progressive; and, if so, the time was not too remote. *Bever v. Spangler, supra.*

VII. It is asserted that nonexperts were allowed to give their opinion as to the sanity of the decedent without first detailing the facts to the jury. This criticism is not well founded. It is often difficult to draw the line between what is a fact and an opinion. *Yahn v. Ottumwa,* 60 Iowa, 429. A question to Woods will illustrate the exception taken. He was asked to state "any difference there was in Mr. Scott's actions or appearance, indicating mental strength or weakness, at the time you last saw her, compared with the first time that you saw her." Now, anything about the decedent indicating her strength or feebleness would be a fact, and this question calls, not for his opinion, but for the facts, as to her actions and appearance. *Severin v. Zack,* 55 Iowa, 28. In *Parsons v. Parsons,* 66 Iowa, 754, it is said: "We think evidence that a person acted strangely or in a childish manner are facts, and may be testified to by any one." *In re Goldlhorp's Estate,* 94 Iowa, 343, it is said: "The witness might testify from what he saw that decedent was weak physically, and, in principle, we see no difference between such inquiry, whether it relates to the physical or mental organization, so long as it calls for facts ascertainable

by observation alone." A careful examination of the evidence leads us to the conclusion that no nonexpert was permitted to give his opinion without first detailing to the jury the facts upon which it was based.

VIII. A hypothetical question was propounded to Dr. Vest, and it is urged that the facts stated have no support in the evidence. If there was no evidence tending to sustain some of the material facts included, then the exception is well founded. *In re Ames,* 51 Iowa, 596. But it is not essential that the facts be proven to exist. It is sufficient if the evidence tends to establish them. *Meeker v. Meeker,* 74 Iowa, 357; *Bever v. Spangler, supra.* Upon examination of the record, we find every fact stated, to have support in the evidence. For instance, it is said in the hypothetical question that the deceased was unable to read and write understandingly, and was wholly uneducated. It is admitted that she could not write, and several witnesses testify that, in reading she was required to spell out the simplest words. Some years before this, she is shown to have filed a sworn answer in a suit, alleging total want of education and inability to read. Again, the fact of her aversion to those who were near and dear to her is referred to, and exception is taken to this description. Her affection for her daughter-in-law and grandchildren at one time is fully established. But a detailed consideration of this evidence will serve no useful purpose. It is asserted that the time is not limited to the date of making the will. The age fixed indicated a period covering that time, and inquiry in a case like this may extend over several years, either before or after execution of the will.

IX. One Dorrance testified that he wrote certain receipts, and signed them as witness to the mark of Eliza Scott, and also her name, and that he believed that he had authority for doing so. One of the receipts is as follows:

"Brooklyn, Iowa, Jan. 18, 1889.

"Received of Thomas Manatt all· moneys, papers, and property that he has had in his hand for my acct., in full to date.

her<br>
"Eliza   X   Scott.<br>
mark

"Witness:   O. F. Dorrance."

The other, similar to this, was drawn to James Manatt. James testified to the execution of the receipt to Thomas, and Thomas to that to James. The record disclosed no objection to the evidence of these brothers. The court afterwards made this entry: "The motion of the contestant heretofore made to strike out from the record the evidence of James and Thomas Manatt relating to whether the persons were there at the time of signing the receipt [the Exhibits 11 and 12] is sustained, and the proponents except, and the jury is so instructed." The abstract does not contain the motion referred to. As the execution of the receipts was proved and undisputed, it was not important to know who were present when they were signed. If the ruling was erroneous, it was without the slightest prejudice.

X. The proponents introduced evidence showing the beginning of a suit in partition by the grandchildren against Mrs. Scott, and also pleadings therein. This was undoubtedly for the purpose of explaining any feeling testatrix may have had against them. The contestants were permitted to show all the circumstances connected with the beginning of this action, and that it was dismissed as soon as the facts were learned. Some letters between the attorneys and one of the contestants were received in evidence. All this simply indicated the employment of an attorney in the usual way, a contract to pay him a part of the land recovered, and a dismissal of the suit. While it has no bearing whatever upon the issue the jury were required to determine, no prejudice could possibly have resulted.

XI.   Exception was taken because of the proof introduced showing the settlement of Robert Scott's estate, and the partition of two hundred and forty acres of land left the widow and heirs after the payment of his debts.   This, we think, was admissible, as bearing upon the question whether the will of Eliza was reasonable and natural.   The proponents had introduced the will of William Scott, reciting that he had made ample provision for Robert during life, and also a deed to him of three hundred and twenty acres of land, executed in 1870.   As Robert died before his father, this evidence showed how much he had at that time, and also the financial condition of the natural heirs of Eliza.   And, if it was material to show the conveyance of the land, it was certainly important to understand its value. *Sim v. Russell,* 90 Iowa, 656.

XII.   A sworn answer of Mrs. Scott to a suit brought on a contract for the purchase of a monument was introduced in evidence, over the objection of the appellants.   In it she alleged that she was very weak, unable to read or write, or to transact business intelligently.   This was filed when she was sixty-nine years of age, and we think it was admissible as an act of the deceased, and as bearing upon the condition of her mind.   Indeed, the appellants insist that it shows her to have been a woman of remarkable memory.   From this we understand them to object to the effect to be given to this answer, rather than its admission in evidence.

XIII.   Complaint is made of the fourth instruction, in which the court tells the jury that "testamentary incapacity does not necessarily require that a person shall actually be insane or of an unsound mind.   Weakness of intellect, whether it arises from extreme old age, from disease, or great bodily infirmities or suffering, or from all these combined, may render the testator incapable of making a valid will, providing such weakness really disqualifies her from knowing or appreciating the nature, effects,

or consequences of the act she is engaged in.   Eccentricity, peculiarities, oddities, or the like, or weakness of mind ordinarily attendant upon old age, do not of themselves necessarily establish a lack of testamentary capacity." In the previous paragraph the jurors were told that a sound mind was necessary to the execution of a valid will, and what was necessary to constitute a sound mind clearly defined, substantially as approved in *Bates v. Bates,* 27 Iowa, 110; *Re Convey,* 52 Iowa, 197; and *Meeker v. Meeker,* 74 Iowa, 357. We take it, the court intended to say that the mind need not necessarily be diseased, but weakness might incapacitate it; and that the instruction was so understood by the jury.

XIV.   The jurors were also told that Eliza Scott had the right to dispose of her property as she desired, and, in the sixteenth instruction, that, in passing upon the issues, the provisions of the will might be considered, "whether just or unjust, whether reasonable and natural, or unreasonable and unnatural, as may be disclosed by the evidence." That the inequities of a will may be taken into consideration in determining the mental capacity of the testator, or whether undue influence has been exercised, is too well settled to require an extended examination of the authorities. *Sim v. Russell, supra;* Schouler Wills, sections 78, 188; *Knox v. Knox,* 95 Ala. 495 (36 Am. St. Rep. 235, 11 South. Rep. 125); *Crandall's Appeal,* 63 Conn. 365 (28 Atl. Rep. 531, 38 Am. St. Rep. 375, and note); *Hammond v. Daike,* 42 Minn. 273 (18 Am. St. Rep. 503), 44 N. W. Rep. 61); *Davis v. Calvert,* 5 Gill & J. 269 (25 Am. Dec. 269); *Peck v. Cary,* 27 N. Y. 9 (84 Am. Dec. 226). But apparent inequality or inequity in the provisions of a will will not alone warrant the presumption of mental incapacity or undue influence. These may be only considered as circumstances in connection with other facts bearing on the condition of the testator's mind. *Turnure v. Turnure,* 35 N. J. Eq. 437; *In re Hess' Will,* 48 Minn. 504 (51 N. W. Rep. 614, 31 Am. St. Rep. 665, and note); *Maddox v. Maddox,* 114 Mo. 35 (35 Am. St. Rep. 734, 21 S.

W. Rep. 499); *Knox v. Knox, supra.* In a technical sense, a will cannot be said to be just or unjust, because the testator is under no obligation to leave his property to any particular person or institution, but the terms have been generally employed in this connection. What is meant by unjust, unreasonable. or unnatural provisions of a will is that they are not as a person in like situation and similar relationship would ordinarily and usually make them. · We think the instruction not subject to misinterpretation.

XV. But inequality or inequity in the provisions of a will may not appear on its face, and, to show this, evidence is sometimes essential to establish relationship and conditions in life. Thus in *Sim v. Russell, supra,* it was held proper to show the financial condition of the son. The contestants were permitted to prove that a half-sister of Mrs. Scott, living just across the street, was so poor as to be an object of charity. It already appeared that proponents were well to do, and that Mrs. Gwin was of limited means. As the decedent preferred some of her brothers to her natural heirs, it was material, in looking into the equities of the will, to know that, in remembering proponents, she forgot several other brothers and this sister, in abject poverty. A will which bestows property on the wealthy, and overlooks the claims to bounty of those who are poor in like relationship, does not commend itself as reasonable or natural. It is a circumstance suggesting a disordered mind or the working of sinister influences. While it may not have a very strong bearing in this case, it was for the jury to take into consideration in connection with the other evidence introduced.

XVI. The appellants insist that interrogatories not calling for ultimate facts were submitted to the jury. But every interrogatory asked for a fact material to be determined; and, while some of them may not have been ultimate, propounding the questions to the jury worked no prejudice. *British American Assurance Co. v. Neil,* 76 Iowa, 646. It is also said that the issue of undue influence ought not to have been submitted to the jury. This may be conceded. But

there was a conflict in the evidence bearing upon the issue raised as to the mental capacity of Mrs. Scott to execute the will; and, whatever our views may be with reference to the full weight of the evidence, the determination by the jury is final. The jury especially found, in answer to the fifth interrogatory, that she did not have mental capacity to dispose of her property according to her desires. We shall not review the evidence in detail. It is enough to say that it tended to show the testatrix did not know the extent of her property, nor those who had claims upon her bounty; that she was possessed of a delusion that her daughter-in-law and her grandchildren and Dr. Reynolds were plotting to do her injury; and that her physical condition indicated that she was suffering from *senile dementia.* The sixty-eight errors assigned are argued. We have touched upon those the parties seem to consider of most importance. The other assignments appear to us to be without merit. The judgment is AFFIRMED.