Meeker v. Meeker.

---

## MEEKER *et al.* v. MEEKER *et al.*

| | |
|---|---|
| 74 | 352 |
| 80 | 578 |
| 74 | 352 |
| 86 | 722 |
| 74 | 352 |
| 87 | 263 |
| 74 | 352 |
| 93 | 602 |
| 93 | 614 |
| 94 | 342 |
| 74 | 352 |
| 99 | 297 |
| 74 | 352 |
| 105 | 574 |
| 74 | 352 |
| 106 | 213 |
| 74 | 352 |
| 108 | 156 |
| 74 | 352 |
| 107 | 751 |
| 74 | 352 |
| 112 | 228 |
| 74 | 352 |
| 116 | 259 |
| 116 | 263 |
| 116 | 607 |
| 74 | 352 |
| 120 | 345 |
| 74 | 352 |
| 130 | 183 |
| 74 | 352 |
| 135 | 438 |
| 74 | 352 |
| 139 | 238 |
| 142 | 48 |

1. **Will**: CAPACITY TO MAKE: EVIDENCE: OPINIONS OF NEIGHBORS. There must of necessity be expressions of opinions by witnesses in regard to the appearance, conversation and acts of one whose mental capacity is brought in question. (Compare *Yahn v. City of Ottumwa*, 60 Iowa, 429.) And so, in this case, where it was sought to show the incapacity of the testator, *held* that the following questions addressed to witnesses who were his neighbors and acquaintances were properly allowed: "How was his appearance? What makes you think he did not know you on this day? Do you mean that his mind was simply weakened, or that it was impaired in some of its faculties? Did he get worse or better up to the last time you saw him? You may state whether he could or could not hold a conversation—an extended conversation."

2. ———: ———: ———: INDIFFERENCE TO CONVERSATIONS. In such case evidence was properly admitted of conversations held in the testator's presence which would naturally call for some response from him, and that he remained silent, without proof that he heard them; no proof being made that his hearing was defective.

3. ———: ———: EXPERT TESTIMONY: HYPOTHETICAL QUESTIONS. Hypothetical questions put to experts should be based upon facts which the evidence tends to prove. It is not required that they should be based upon conceded facts; nor is technical accuracy required in framing the questions. (For application of rule, see opinion.)

4. ———: ———: DEFINITION. A person of sufficient capacity to make a will is one who has full and intelligent knowledge of the act he is engaged in, a full knowledge of the property he possesses, an intelligent perception and understanding of the disposition he desires to make of it, and of the persons he desires shall be the recipients of his bounty, and the capacity to recollect and comprehend the nature of the claims of those who are excluded from participating in his bounty; but it is not necessary that he should have sufficient capacity to make contracts, and do business generally, nor to engage in complex and intricate business matters. (Compare *Bates v. Bates*, 27 Iowa, 110; *Will of Convey*, 52 Iowa, 197.)

5. —— : —— : EXPERT TESTIMONY : WEIGHT OF. Where the capacity of the testator was questioned, the court instructed that in such cases the testimony of medical men of large experience is, as a general rule, entitled to more weight than that of unprofessional men, but that it was still a question for the jury whether the expert testimony in the case should have more weight than that of the other witnesses. *Held* that the instruction was correct, in view of the fact that the experts were two on each side, and that these had each made a personal examination of the testator for the very purpose of ascertaining his mental capacity.

6. —— : PROBATE : CONTEST : PROBATE REFUSED : COSTS. It is the duty of an executor to probate the will, and he should not, in the absence of a showing of bad faith, be held personally liable for the costs. And in this case, where the executors and others proposed the will for probate, but it was contested on the grounds of undue influence and incapacity, and there was a general verdict for the contestants, *held* that a motion to tax all the costs, excepting the fees of the witnesses to the will, to the proponents, was properly overruled.

*Appeal from Tama District Court.*—HON. JOHN L. STEVENS, Judge.

### FILED, MAY 8, 1888.

THIS is a proceeding involving the validity of an instrument in writing claimed to be the last will and testament of William Meeker, deceased. The plaintiffs, being four of his sons and one son-in-law, are the legatees and devisees under the alleged will; and they presented it for probate. Two of them are named therein as executors. The defendants are two sons and a daughter of the testator who were not made beneficiaries under the will, and they contest it upon the grounds that it was obtained by undue influence, and that the decedent did not have sufficient mental capacity to make a valid will. There was a trial by jury, and a verdict that the writing signed by the deceased was not his will. From a judgment on the verdict plaintiffs appeal.

*Stivers & Strong* and *D. D. Appelgate,* for appellants.

*Struble & Stiger,* for appellees.

VOL. 74—23

ROTHROCK, J.—I. The writing claimed to be a will was made and executed in August, 1886, and William Meeker died in October of the same year, aged seventy-seven years. He removed from Warren county, Ohio, to this state in the year 1856, and for many years prior to and up to the time of his death he owned and lived upon a farm in Tama county. By the will in question he disinherited the contestants. The evidence introduced upon the trial was directed mainly to his mental capacity at the time the will was made. There is no conflict in the evidence that for some years before the will was made the old man was in very feeble health, and that he had to a certain extent lost much of his former capacity for the transaction of business. At one time, by an arrangement among his children, a neighbor was selected to hold certain of his bank certificates of deposit, and transact business to some extent for him. In addition to his feeble condition, he had lost the sight of one eye, and the sight of the other was seriously affected. His condition was such that legal proceedings were instituted involving his mental capacity. This led to an examination of him by physicians and others for the purpose of ascertaining his condition. These parties were called, and examined as witnesses, and, as is usual in such cases, there was quite a conflict in their testimony. The first complaint urged in argument by appellant's counsel is that the court erred in rulings upon the admission and exclusion of evidence. Counsel for contestants propounded the following questions to witnesses for contestants : "How was his appearance ? What makes you think he did not know you on this day? Do you mean that his mind was simply weakened, or that it was impaired in some of its faculties ? Did he get worse or better up to the last time you saw him ? You may state whether he could or could not hold a conversation—an extended conversation." These questions were objected to by counsel for proponents, and the objections were overruled. The witnesses to whom the questions were

*1. WILL : capacity to make : evidence : opinions of neighbors.*

Meeker v. Meeker.

propounded were not physicians. They were neigh-bors of the decedent who were well acquainted with him, and were competent to give opinions as to his sanity. It is claimed that these questions called for opinions upon questions of which the jury were equally qualified to judge, if possessed of the same facts as the witnesses. We think the rulings of the court were correct. It seems to us quite plain that, if the witness could not reproduce the appearance of the decedent, he could not detail facts so as to put the jury in his place, so to speak. There must of necessity be expressions of opinions by witnesses in regard to the appearance, conversation and acts of one whose mental capacity is brought in question. *Yahn v. City of Ottumwa*, 60 Iowa, 429.

II. Other witnesses were allowed to detail conversations had in the presence of the decedent regarding the condition of his mind. They were such as would naturally call for some response from him, and he remained silent. It is insisted that these conversations were incompetent evidence, because the witnesses did not state that decedent heard what was said. There is no showing made that his hearing was defective, and we think it was a question for the jury whether he heard the conversations.

2. —— : —— : indifference to conversations.

III. Both sides introduced physicians who had examined the decedent with the view of making up an opinion as to the condition of his mind. Those who were introduced by proponents expressed the opinion that he was of sound mind. To one of them counsel for contestants propounded the following question on cross-examination : " Supposing Mr. Meeker had been a man of fair, ordinary ability all his life, a man of fair, ordinary intelligence and mental capacity, and providing, for a year or so prior to a given date, his mental faculties were more or less impaired,—such as the faculty of memory impaired, and forgetful,—couldn't remember things,

3. —— : —— : expert testimony: hypothetical questions.

and he couldn't remember some of his nearest neighbors who have resided near to him for twelve or thirteen years,—providing his children, or some of them, should have a meeting in his presence, and state his mind was in such a condition that he was not any longer fit and capable of transacting his own business, and they should select an agent or guardian to take charge of his business and papers,—such as bank checks, drafts, certificates of deposit, and notes,—and should turn them over to the agent in his presence, and the old gentleman didn't make any objection to that, or to the assertion that his mind was in that condition that he was no longer fit to do business, that his physical condition was also very weak,—what would you say, then, your opinion is as to whether Mr. Meeker was of sound or unsound mind?" To another physician a question was propounded in these words: "Suppose the testator was seventy-seven years of age, providing he had been afflicted with the complaint—say for a year or so more previous to making of his will; providing his condition was such that at times he would not know some of his nearest neighbors, and his old friends and acquaintances whom he had known for thirty years; providing he had a loss of memory; providing, when people would attempt to hold conversation with him, he would stop it, saying, 'I can't remember;' providing he would not know any of his grandchildren who were with him in the evening, and stayed all night; providing he was unable to hold a connected conversation,—he would forget a few minutes afterwards what he had said a few minutes previous; providing one of his near neighbors, and a man who had been appointed and selected as his agent, would say to him, in a conversation referring to an old acquaintance at a distance, he mentioned the fact he died, and had become of unsound mind, and couldn't remember his children, and the testator should say, 'William,' referring to the neighbor, 'that is just my condition; I am no longer able to remember or know my own children one from the other;' and this physical

condition should continue which I have mentioned,— and then what would you say would be your opinion of the testator's mind as to whether it was sound or unsound?" These questions were objected to, upon the ground that they were incompetent as being without proper foundation in the evidence. The objections were overruled. Counsel for appellants claim that these rulings were erroneous, and they cite to us *State v. Cross*, 68 Iowa, 180. In that case a witness was sought to be impeached by expert evidence, and it was held that the hypothetical questions put to the experts should be based upon the language of the witnesses. In the case at bar the question at issue was the sanity of the decedent. It is a general rule that hypothetical questions put to experts should be based upon facts which the evidence tends to prove. In this case a careful examination of the evidence leads us to the conclusion that the questions under consideration were not objectionable. It is not required that the questions should be based upon conceded facts, nor is technical accuracy required in framing the questions. If they are entirely without the support of evidence, they should be excluded. Ordinarily, opposing counsel will not be slow, in a reëxamination of the witness, to correct the hypothesis upon which the question is based, if it be incorrect.

IV. Among other instructions, the court gave to the jury the following : "A person of sound mind, within the meaning of the law in this case, is one 4. ——:——: definition. who has full and intelligent knowledge of the act he is engaged in, a full knowledge of the property he possesses, an intelligent perception and understanding of the disposition he desires to make of it, and of the persons he desires shall be the recipients of his bounty, and the capacity to recollect and comprehend the nature of the claims of those who are excluded from participating in his bounty; but it is not necessary that he should have sufficient capacity to make contracts, and do business generally, nor to engage in complex and intricate business matters." It is claimed that this

instruction fixes testamentary capacity as greater than is legally required. There are varying forms of expression to be found in the books in defining testamentary capacity. In *Bates v. Bates*, 27 Iowa, 110, an instruction in substance and meaning very nearly the same as that under consideration was approved by the court; and in *Will of Convey*, 52 Iowa, 197, an instruction substantially like this one was sustained. We do not think the objection to the instruction ought to prevail.

V. Another instruction directed the jury that "the testimony of medical men of large experience, as a general rule, in this class of cases, is entitled to more weight than that of unprofessional men. Still it is a question for the jury to determine whether the testimony of medical men who testified in this case is entitled to more weight than that of other witnesses." Four physicians were examined as witnesses,—two in behalf of the proponents, and two in behalf of the contestants. They were not mere experts whose testimony was founded upon facts testified to by other witnesses. They each made a personal examination of the decedent for the very purpose of ascertaining his mental capacity. In view of these facts we think the instruction complained of is correct.

VI. It is claimed that another instruction required the jury to find that, in order to sustain the will, they must find that the evidence disproved the averment of undue influence. We do not regard it as necessary to set out the instruction complained of. It appears to us that it could not have been understood by the jury as imposing upon the proponents the burden of proving that the will was not procured by undue influence.

VII. It is urged that the verdict is not sustained by the evidence. The evidence is conflicting, and we entertain no doubt that it is abundantly sufficient to sustain the verdict, especially upon the ground that the decedent was wanting in testamentary capacity.

VIII. The contestants filed a motion asking that all the costs of the trial, excepting the fees of the witnesses

6. ——: probate:
contest: pro-
bate refused:
costs.

to the will, be taxed to the proponents. The motion was overruled, from which ruling the contestants appeal. We think, considering the facts of the case, that the ruling was correct. It is true, as contestants claim, that the statute (Code, sec. 2933) provides that "costs shall be recovered by the successful party against the losing party." But it is the duty of an executor to probate the will of his testator, and he should not be held personally liable for costs in the absence of a showing of bad faith or the like. Two of the parties named as proponents were the executors named in the will. It is possible, if the verdict had been based on undue influence exercised by them, they should be required to pay the costs. But the verdict was general, and an examination of the evidence leaves little doubt that it was founded upon a want of testamentary capacity in the decedent. It may be likened to a claim found among other assets of an estate. It is the duty of the executor to proceed to collect it by legal means if necessary. If he should be defeated in an action, he cannot be held personally liable for costs, unless he, in bad faith, makes them unnecessarily. *Phillips v. Phillips*, 81 Ky. 328.

AFFIRMED.