IN THE MATTER OF THE ESTATE OF CHARLES HOWE, Deceased, RUTH W. HOWE AND FRED B. HOWE, Contestants and Appellees, v. JOHN W. RICHARDS, Executor and the Legatees under the Will, Preponents and Appellants.

**Will Contest:** RECEPTION OF EVIDENCE. Where contestants of their ancestor's will claimed that his lack of affection for them was evidence of an unsound mind, it was proper to allow one of them to be asked as to whether they understood they would be welcome at the ancestor's house, since the feeling between the parties was a proper subject of inquiry.

LETTERS WRITTEN TO TESTATOR BY CONTESTANT. Where the contestants of their ancestor's will claimed that his lack of love for them was evidence of an unsound mind, it was not erroneous to permit them to introduce letters written by one of them to the deceased long prior to his death, and received by him, tending to show affection on the part of the writer for testator, since they were not within the rule that excludes a party from proving his own declarations in his own behalf, but within the rule permitting such proof when the declarations are made to the other party.

*Same.* Where contestants of a will of their ancestor claimed that his lack of affection for them was evidence of an unsound mind, letters written by one of the contestants to the testator, showing love and affection for him, were not inadmissible, under Code, section 4604, declaring that no party to any action or proceeding shall be received as a witness in regard to any transaction between such witness and a person at the commencement of the examination, deceased.          ..

HYPOTHETICAL QUESTION: *Harmless error.* If hypothetical questions put to a witness did not conform to the facts proved, or to prove which the evidence tended, there was no prejudicial error in their allowance, where the court charged that, if it turnd out that such hypothetical questions were, in material and important particulars incorrect, unfair or untrue, the jury should attach no weight to the answers thereto.

EXPERTS. In a will contest on the ground that testator was lacking in testamentary capacity, an instruction that the conduct of deceased was of more weight than the opinion of witnesses, whether expert or otherwise, and that the jury should draw its own conclusions, whether they did or did not agree with the opinions of the witnesses, was not erroneous, in that it charged that expert testimony should be regarded as the lowest order of evidence.

INSTRUCTIONS. On the contest of a will, on the ground that testator did not have any testamentary capacity, an instruction to the jury to determine whether testator, by reasons of his delusions, peculiarities, and dissipated habits, was incapable of understanding or appreciating the relation which he bore to the contestants, or the duties and rights which grew out of such relation, was not erroneous, in that it told the jury that they might find the testator of unsound mind because of peculiarities alone.

SAME. Where, on the contest of a will, on the ground that testator had not testamentary capacity, the jury were told to consider whether the testator had been led to make the bequests he did through insane delusions and unfounded prejudices, which wholly incapacitated him from forming a judgment with respect to his relation to the contestants, or any other person, the use of the words "other person" did not render the instruction erroneous, since his ability or inability to form a judgment as to other persons, especially the devisees, was a proper matter to be considered.

SAME. Where, on a contest of a will, on the ground that testator did not have testamentary capacity, the court, after instructing that the presumption is in favor of sanity, and the burden is on the party asserting insanity, said that in doubtful cases, unless there appears a preponderance of proof of insanity, the issue should be found the other way, the instruction was not erroneous as limiting the presumption to doubtful cases.

SAME. An instruction that a person of sound mind is one who has intelligent knowledge of the act he is engaged in, full knowledge of all the property he possesses, an intelligent understanding of the disposition he desires to make of it, and the

capacity to recollect and comprehend the nature of the claims of those who are excluded from participating in his bounty, was not erroneous, as fixing testamentary capacity at too high a standard.

SAME. On the contest of a will, on the ground that the testator was lacking in testamentary capacity, the court properly charged that a long-continued habit of intemperance may gradually impair the mind and destroy its faculties, so as to produce insanity of another kind; that drunkenness long-continued, or too much indulged in, might produce on some temperaments permanent insanity,—there being some evidence as to testator's intemperance.

SAME. An instruction that it was not the law that a dissipated man might not execute a valid will, and that, if fixed mental disease has supervened on intemperate habits, the person was as incompetent to make a will as though the mental disorder resulted from any other cause, was properly given in a will contest, where want of testamentary capacity was alleged, since the cause was a proper subject of inquiry to determine the existence of the mental disease.

SAME. Where, on the contest of a will on the ground that testator was lacking in testamentary capacity, the court charged that an unnatural or unreasonable disposition of property might be considered on the issue of unsoundness of mind, in connection with all other evidence in the case; that, to defeat the will on the ground alone of the character of the dispositions of the property made therein, they must not only be extravagant and apparently unreasonable, but depart so far from what would be regarded as natural as to be fairly attributable to no other cause than that of a disordered mind,—the instruction was not erroneous, it being followed by an instruction that a testator of sound mind might dispose of his property as he wished.

**Appeal:** OBJECT ON APPEAL. Where testimony was not objected to, its reception could not be made ground on which to base error on appeal.

SAME: *Motion to strike testimony.* Where, on the contest of a will, on the ground that testator was without testamentary capacity, a witness was asked whether deceased was able to converse connectedly and intelligently, and contestants objected as calling for a conclusion, and the objection was sustained, but the witness answered, and no motion was made to strike the answer, the ruling was without prejudice.

*Appeal from Clarke District Court.*—HON. W. H. TEDFORD, Judge.

WEDNESDAY, OCTOBER 17, 1900.

THIS is a proceeding to admit to probate the last will of Charles Howe, deceased, and a codicil thereto. John W. Richards, executor, and the legatees named in said will, appear as proponents, and Ruth W. Howe and Fred B. Howe, grandchildren of the deceased, appear as contestants. The ground of contest is that at the time the said will and codicil were signed by deceased, "and thereafter until his death, the said Charles Howe was of unsound mind, and incapable under the law, of making any disposition of his property." As showing the character of his unsoundness of mind, contestants alleged as follows: "That the said Charles Howe, for years before his death, by reason of delusions, peculiarities, and dissipated habits, was incapable of understanding or appreciating the relations which he bore to the contestants, or the duties and rights which grew out of such relation; that by reason of the matters aforesaid, the mind of the said Charles Howe became so distorted and unsound that he was wholly unfit to form a judgment with respect to the proper disposal of his property, and was led to make the bequests shown in and by the instruments through insane delusions and unfounded prejudices, which wholly incapacitated him from forming a judgment with respect to his relations to these contestants, or any other persons, and they, therefore, respectfully show that the said instruments so offered for probate are not the last will and testament of the said Charles Howe, and ought not be received as such." Proponents answer, denying said allegation, and, upon trial had, verdict and judgment were rendered in favor of contestants. Proponents appeal.—*Affirmed.*

*Temple & Hardinger, W. B. Tallman,* and *James Rice* for appellants.

*Cummins, Hewitt & Wright* and *Jamison & Park* for appellees.

GIVEN, J.—I. Appellants' complaints are against certain rulings on evidence, certain instructions and the sufficiency of the evidence. A brief statement of undisputed facts and of the claims of the parties will aid in understanding the questions to be considered. On the sixth day of July, 1898, Charles Howe, for many years a resident of Osceola, Iowa, died at the age of 82 years, leaving as estate consisting of real and personal property, worth about $16,000. Deceased had but one child, George F. Howe, the father of these contestants. George F. Howe died prior to the death of his father. Contestants are the only surviving lineal descendants of Charles Howe, and, in the absence of a valid will, are entitled to inherit his entire estate. It is admitted that George F. Howe died a poor man, and that contestants are without property or means, and are compelled to earn a livelihood. On the fourteenth day of April, 1897, Charles Howe executed the instrument under consideration, in due form, as his last will, wherein he bequeathed and devised his entire estate as follows: To the Chicago Foundlings' Home for Little Children, located in the city of Chicago, $200; to the Old Ladies' Home, in Worcester, Mass., $300; to the trustees of the Baptist Church in Osceola, Iowa, a certain lot in Osceola; to the Presbyterian Church of Osceola, a certain other lot, and, in addition thereto, $3,000 in money, to be used for maintaining preaching and keeping up the ordinances of the church; to Mrs. J. W. Richards, all portraits, pictures, and photographs; to Mrs. Thomas Roman, his mahogony parlor set; to Mrs. Cordelia Knight, of Worcester, Mass., "all the rest and residue of my

estate, both real and personal, except my gold watch, to have and to hold the same forever, if she survives me, if not, then to her children in equal shares; "to Samuel Bond, of Osceola, Iowa, my gold watch and chain." John W. Richards, of Osceola, was named as executor. Mrs. Roman having died, Mr. Howe issued a codicil, on the fourteenth day of April, 1897, to said will, giving the mahogony parlor set to Mrs. James Beard. Charles Howe having departed this life, said will and codicil were presented for probate on ——— day of July, 1898.

Contestants' claim is that at the time Mr. Howe executed these instruments, and continuously thereafter until his death, he "was of unsound mind, and incapable, under the law, of making any disposition of his property." In support of this, they introduced evidence tending to show a want of affection on the part of the deceased toward his son, whose death had occurred prior to that of his father, and toward the wife of said son and these contestants, their only children. They also offer evidence as to his habits and conduct, and the opinions of a number of witnesses, including three experts, as to his mental condition. Proponents deny that deceased was of unsound mind, or incapable of executing said will and codicil; and in support thereof introduced a number of witnesses, including four experts, as to the habits and conduct of the deceased and the opinions of the witnesses as to his mental condition.

II. Appellants complain that certain hypothetical questions were permitted to be put to the expert witnesses on the ground that the questions did not present the facts which the evidence tends to establish. Counsel say: "We believe the weight of authority requires that a hypothetical question shall conform with reasonable strictness to the facts proven, or tended to be proven, by the testimony in the case on the part of the parties putting the question." We think the questions complained of are within the rule as stated, but, if not, there was no prejudice,

as the court instructed that, "if it turns out that such hypothetical statement of facts is in material and important particulars incorrect, unfair, partial and untrue, a jury, in such case, should attach no weight whatever to the answer of the medical experts founded upon such hypothetical statement of facts." .

Appellants say the court erred in permitting Ella Howe to testify to conversations with Mrs. Charles Howe in her lifetime. But little testimony of this character was given, and it does not appear that it was objected to.

Mrs. Lympus was asked what was the understanding of contestants' family as to whether they would be welcome at their grandfather's house, to which appellants objected, and complain that their objection was overruled. The feeling between the parties was a proper subject of inquiry, and, in view of the answer given by the witness, there was no prejudice in the ruling, even if it was incorrect.

W. S. Beard, called by proponents, was asked as to deceased being able to converse connectedly, coherently, and intelligently in 1897. Contestants objected, as calling for a conclusion, and the objection was sustained, but the witness proceeded to answer fully, and no motion was made to strike the answer; therefore the ruling was without prejudice.

Contestants were permitted to introduce two letters, shown to have been written by contestant Ruth Howe to the deceased long prior to his death, one dated August 20, 1892, and the other September 4, 1894, and to have been received by the deceased, in due course of mail, soon after their dates. The contents of these letters tend to show a friendly feeling and affection upon the part of the writer for her grandfather, and a solicitude for his happiness and comfort. Proponents objected as incompetent, because they are declarations made by the writer in her own favor, because they are personal communications

with deceased, and because the writer is claiming by descent from the deceased. If, instead of writing these letters, the contestant Ruth W. Howe had made the same statements to the deceased in the presence of a third person, and deceased had made reply, or had remained silent, it would surely be competent for contestants to show by that third person that the statements were made to deceased, and his reply thereto, or that he made no reply. These letters are the third person. It is not Ruth W. Howe who is testifying, but the letters, and they are admissible, because they were received by the deceased. They are not within the rule that excludes a party from proving his own declarations in his own behalf, but come under the rule that permits such proof where the declarations are made to the other party. They are not within the rule provided in section 4604 of the Code. We discover no prejudicial errors in the rulings on the evidence.

III.    Proponents complain at length of nearly all of the 17 instructions given. Of the first it is claimed that under it the jury might find the testator of unsound mind because of peculiarities alone. But not so. The jury was told to determine whether he, "by reason of delusions, peculiarities, and dissipated habits, was incapable of understanding or appreciating the relation which he bore to the contestants, or the duties and rights which grew out of said relation." Plainly, the inquiry was not left to rest upon peculiarities alone. The jury was further told to consider whether the testator was led to make the bequests that he did "through insane delusions and unfounded prejudices, which wholly incapacitated him from forming a judgment with respect to his relation to these contestants or any other person." The use of the words "other person," is complained of. His ability or inability to form a judgment as to his relations to other persons, especially to these devisees and legatees, was a proper matter to be considered.

In the second, after instructing that the presumption is in favor of sanity or soundness of mind, and that the burden is upon the party asserting insanity or unsoundness of mind to prove it, the court said: "Hence, in a doubtful case, unless there appears a preponderance of proof of unsoundness, the issue should be found the other way." It is insisted that this excludes the presumption of sanity except in doubtful cases; but not so, for, if there appears a preponderance of proof of unsoundness, the presumption is overcome. The instruction does not limit the presumption to doubtful cases, but declares that a. preponderance of proof of unsoundness overcomes the presumption.

The third instruction is claimed to be "erroneous and misleading as a statement of testamentary capacity, for the reason that it fixes too high a standard." This instruction is identical with that approved in *Meeker v. Meeker,* 74 Iowa, 352, and in harmony with the prior and subsequent holdings of this court. Many decisions from other states are cited as at variance with *Meeker v. Meeker,* but, that case having stood for so many years as a correct announcement of the law in this state, it is unnecessary that we review those cases for the purpose of determining whether or not they are in harmony with our rule. We are not pointed to, nor do we discover, any sufficient reason for changing the rule as announced in *Meeker v. Meeker, supra.*

Complaint is made of the use of the words "rational understanding" in the fourth instruction. This was said in relation to the ability of the testator to understand the business he was engaged in in the making of the will, which was not unfavorable to the proponents, and, taken in connection with the other part of the instruction, is not erroneous.

In the fifth the court instructed "that a long-continued habit of intemperance may gradually impair the mind

and destroy its faculties, so as to produce insanity of another kind. Drunkenness long continued, or much indulged in, may produce on some minds and on some temperaments permanent derangement and fixed insanity." This instruction was called for by evidence as to the intemperate habits of the testator. The complaint seems to be that the effect of intemperance was a matter to be proven by expert testimony, and that the court might not assume it. Concede this, yet there was evidence to warrant the instruction. The court directed the jury to inquire whether testator was of intemperate habits, as claimed, prior to the making of the instruments and at the time they were executed. It is insisted that there was no evidence that such was his habit at the time the instruments were executed; but not so, we think.

It is complained that the sixth instruction is obscure and misleading. It very plainly informed the jury that it was not the law that a dissipated man, or one who was in the habit of excessive indulgence in strong drink, may not execute a valid will, and added: "Yet, if fixed mental disease has supervened upon intemperate habits, the man is as incompetent to execute a will as though such mental disorder resulted from any other cause." It is argued that "it is the mental disease with which we have to deal, without regard to what it supervenes upon." Surely, the cause is a proper subject of inquiry to determine the existence of the mental disease.

It is contended that under the eighth instruction the jury might base their findings for contestants upon the provisions of the will alone. The jury was told that an unnatural or unreasonable disposition of property by will may be considered on the issue of soundness or unsoundness of mind, in connection with all the other evidence of the case; that, to defeat the will upon the ground alone of the character of the dispositions of property made therein, they must not only be in some degree extravagant

and apparently unreasonable, "but they must depart so far from what would be regarded as natural, and apparently reasonable, as to appear fairly attributable to no other cause than that of a disordered intellect or unsound mind." As we read this instruction, it simply submits the provisions of the will as a circumstance to be considered, in connection with the other testimony, in determining the issue of soundness or unsoundness of mind, and, in view of the instruction following, could not have been otherwise understood. In the ninth instruction, the right of a testator of sound mind to dispose of his property to whom he willed is fully recognized.

In the tenth the jury was told, in effect, that the things done and said by Charles Howe, and his manner of conducting himself, are of more weight, and entitled to greater consideration, than the mere opinion of the witnesses, whether experts or non-experts, and that it was the right of the jury to draw its own conclusions from the acts and declarations and conduct of deceased, whether or not such conclusions agree with the opinions of the witnesses. Respecting the opinion of non–expert witnesses, the court instructed that they should be given no weight, "except in so far as the facts and circumstances related by them in evidence give support to and sustain such opinion." It is said this instruction is in conflict with *State v. Townsend*, 66 Iowa, 741. In that case it was held that such expert evidence as we have in this case should not be regarded as the lowest order of evidence, as in cases involving the genuineness of handwriting. There is nothing in conflict with this statement of the law in these instructions.

It is said of the eleventh instruction that it is "misleading and erroneous, in that it is argumentative, vague, and uncertain." As we read it, it is a plain and concise statement of the law upon the subject treated of therein.

As to the twelfth, it is contended that the court assumed one of the subdivisions of contestants' hypothetical

questions. The court assumed nothing, but instructed to the effect that, unless the hypothesis was established in each material and important particular, no weight should be given to the opinion of the witness.

It is claimed that in the fourteenth instruction the court assumes as facts things which are not proven. We think there is evidence of every fact upon which that instruction is based.

The sixteenth instruction, as we view it, is a very proper conclusion of the whole subject, and enjoined upon the jury in fitting terms the performance of their whole duty, "influenced only by the evidence, in the light of the instructions given them by the court." The instructions as a whole were a clear, concise, correct, and logical submission of the law of the case, and are without error prejudicial to the proponents in any of the respects complained of.

IV. Proponents insist that the evidence does not support the verdict. It will serve no desirable purpose to extend this opinion by a discussion of the evidence. It is sufficient to say that though it is in sharp conflict in so far as the conduct and habits of deceased are involved, and in the opinions of the witnesses as to his mental condition, the verdict has such support as that, under the uniform rulings of this court, we are not warranted in interfering with it.— AFFIRMED.

GRANGER, C. J., not sitting.