In the Matter of Probating the Will of THOMAS WALKER, Deceased, MARY ELLEN BARRY, Executrix; MARY ELLEN BARRY, NELLIE O'ROURKE and JOSEPH BARRY, Proponents, Appellants, v. JOHN WALKER and BESSIE BATES, Contestants.

**Evidence:** MATTERS OF OBSERVATION. A witness may state that a testator during the time he had known him was physically weak and decrepit, and that his conversation was incoherent; as the same are matters of personal observation and statements of fact rather than conclusion.

**Same:** TESTAMENTARY CAPACITY: NONEXPERT EVIDENCE. A witness may give his opinion of the mental capacity of a testator after he has detailed sufficient facts as a basis therefor; and the sufficiency of the facts as a basis for the opinion is a question for the jury.

**Same:** EXPERT EVIDENCE. A physician may testify to the mental condition of a patient whom he has attended, whether called by the proponents or the contestants of a will.

**Same.** The opinion of a physician concerning the capacity of a testator to comprehend any particular business or property that he had, or to know and remember his heirs and his obligations to them, based upon conversations within a year preceding the making of his will, was not subject to the objection that the conversations were so remote as to render the opinion inadmissible.

**Same.** Although a physician made his observations, from which he concluded that testator was incapable of forming a rational judgment, some time prior to the making of the will in question, still as the inquiry was directed to his mental condition at that time his opinion was admissible.

**Same:** EVIDENCE OF MENTAL CONDITION PRIOR TO WILL. Where there is evidence tending to show *senile dementia* at the time of making a will, and that there had been a gradual loss of mental capacity extending over a period of several years, evidence that testator was incapable of comprehending a business transaction four or five years prior to making his will was competent.

**Same:** DECLARATIONS OF TESTATOR: EVIDENCE. Evidence that a son received nothing for caring for his father's property was competent on the issue of mental capacity, as tending to rebut an inference to be drawn from the father's statement that the son would use up the property before he died. It was also competent to show that testator offered to convey the property to the son in return for care and support.

**Same:** EVIDENCE: HARMLESS ERROR. Where the whole matter of the appointment of a guardian for testator was before the jury, the admission in evidence of the petition in the guardianship proceeding, in the contest of testator's will, was without prejudice.

**Trial:** STATEMENTS OF COURT: HARMLESS ERROR. A restatement by the court of certain evidence which is before the jury, made in connection with a ruling, is not prejudicial error; especially where the court directs the jury not to consider its statement.

**Wills:** MENTAL CAPACITY: PRESUMPTION: BURDEN OF PROOF. The law presumes that a testator had mental capacity to make a will which has been duly executed and attested, but if evidence is produced which counterbalances such presumption the proponents must show by affirmative evidence that the testator was of sound mind when the will was executed.

**Same:** MEASURE OF CAPACITY. The making of a valid will requires a mind capable of exercising judgment, reason, and deliberation, and of weighing its consequences and effect to a certain degree upon the testator's estate and family.

*Appeal from Hardin District Court.*—HON. R. M. WRIGHT, Judge.

WEDNESDAY, NOVEMBER 15, 1910.

A jury found that Thomas Walker was mentally incompetent to make the will in question, and the proponents appeal from a judgment on such verdict.—*Affirmed.*

*Ward & Williams, David Evans, H. C. Liggett,* and *E. P. Andrews,* for appellants.

*F. M. Williams* and *Lundy & Wood,* for appellees.

SHERWIN, J.—A witness for the contestants was permitted to testify that the testator's conversations with him were "rambling," and that his physical condition during the time that he had known him was "weak

1. EVIDENCE: matters of observation.

and decrepit." Another witness testified that, when the testator talked with him about personal business matters, "it was a conglomeration of his continual business." These answers stated facts, and not conclusions, and were competent. *Schmidt v. Dubuque,* 136 Iowa, 401; *Vannest v. Murphy,* 135 Iowa, 123; *Manatt v. Scott,* 106 Iowa, 203.

Several nonexpert witnesses were permitted to testify that in their judgment the testator was of unsound mind when he executed the will in question, and the appellants

2. SAME: testamentary capacity: nonexpert evidence.

assert that such opinions had no basis of fact or acts. It is true that in some instances the facts related by the witnesses as a basis for the opinion given were rather unsatisfactory, but the sufficiency of the facts as a basis for the opinion was a question for the jury, and not for the court. *Stutsman v. Sharpless,* 125 Iowa, 335. We have carefully examined the testimony of each witness, and find that in each instance there was some foundation for the opinion given.

The will in question was made in March, 1907. A physician who had attended the deceased occasionally during the four or five years immediately prior to January,

3. SAME: expert evidence.

1907, was allowed to testify as to his physical and mental condition at the time of such visits. Objection was made to the competency of the witness under the provisions of Code, section 4608. In *Winters v. Winters,* 102 Iowa, 53, we held that a physician was a competent witness as to the physical and mental condition of his patient, whether called by an executor of the will or by an heir who was contesting the validity of the will. This rule was followed in *Kirsher v. Kirsher,* 120 Iowa, 337, and is controlling here.

The same witness was also permitted to answer the following questions over the proponents' objections: "What was your judgment as to his mental condition, as to whether or not, at the time you talked to him and that you have reference to in your testimony, he was capable of forming a rational opinion as to the value of any particular business or property that he had, especially we will say his farm at or near Owassa?" "You spoke of one time when he spoke of making a will, and his not remembering his grandchildren, and when he finally said he would go down and have Mr. Huff make his will, what was your judgment at that time, Doctor, of his mental condition, as to his capacity to know and remember the obligation, if any, that he was under to these children?" "And in reference to the management of the property did you hear him talk anything about that? What was your judgment as to whether or not he was able to intelligently comprehend the property he was talking about?" It is said that these questions called for the opinion of the witness on the ultimate question to be determined by the jury and were therefore incompetent. The record does not clearly show when any of the conversation occurred upon which the witness based his answers to the several questions; but it is shown that they were held within five or six years before the 1st of January, 1907, and that none of them took place after said date. It may be said that it fairly appears that the conversations and observations forming the basis of the opinion given occurred a year or more before the will was made. The questions and answers were therefore competent under the holding in *Glass v. Glass*, 127 Iowa, 646, and *In re Overpeck's Will*, 144 Iowa, 400.

4. SAME.

Another expert witness was asked this question: "Take a man who imagines he has all sorts of property and imagines large properties; . . . what do you say now as to whether at those times he was capable of forming a ra-

tional conclusion as to what property he really did have?"

5. Same.

The same witness was also permitted to testify that the testator was not, in his opinion, capable of forming a rational conclusion as to his children and grandchildren. This witness made the observations upon which he based his answers to these questions at least a year and a half before the date of the will, and, as the questions called for the mental condition of the testator at that time, they were competent. The contention that some of the questions put to this expert witness had no basis in the evidence can not be sustained.

Still another witness testified that in 1903 he was present when the testator's own son computed the interest on notes belonging to his father and heard the talk between the two at that time, and that the testator did not then realize the amount and value of said notes. The additional objection to such testimony is that it related to a time too remote from the date of the will. The evidence tended to show *senile dementia* at the time the will was made, and that there had been a gradual loss of mental capacity extending over a period of several years. The testimony tended to show the character of the testator's mental incapacity, and was therefore competent.

6. Same: evidence of mental condition prior to will.

The testimony of John Walker that he had received nothing for his services in caring for his father's property was competent as tending to rebut inferences to be drawn from his father's alleged declaration "that John would have his (the father's) property all used up before he died anyway." *In re Perkin's Estate,* 109 Iowa, 216.

7. Same: declarations of testator: evidence.

It was also competent to show that the testator had at one time offered to transfer his property to his son in consideration of future care and support. *Bever v. Spangler,* 93 Iowa, 579.

In March, 1906, a temporary guardian of the property

of the testator was appointed upon a petition signed by the son, John Walker. The contestants were permitted to put the petition in evidence for the purpose of showing that it had been filed, and the date thereof. There was no prejudice in the ruling, whether right or wrong, because the whole matter of the appointment of a guardian was then before the jury.

8. SAME: evidence: harmless error.

There was a difference of opinion among the witnesses as to the age of the testator when the will was made; some of the testimony tended to show that he was about ninety-five. A witness was asked this question: "And if he was more than ninety years of age, would you consider that senile dementia?" The proponents objected to the question on the ground that the evidence of John Walker did not show that his father was more than ninety years old. In ruling on the objection, the court remarked that he had figured it up from the testimony of John Walker and made the age ninety-five. Complaint is made of the statement of the court. The court did not express an opinion as to the testator's age. What was said amounted to no more than a restatement of what the witness had testified to and that was already before the jury. Furthermore, the court instructed the jury to entirely disregard its statement relating to the age of Thomas Walker, and we must presume that the jury did in fact disregard it. Many other complaints are made of the rulings on the introduction of evidence; but we have referred to all rulings which seem to be of sufficient importance to require notice.

9. TRIAL: statements of court: harmless error.

Complaint is made of the following instructions:

A will proved to have been executed and attested as prescribed by law will be presumed to have been made by a person of sound mind; but, if testimony is shown which counterbalances that presumption, the party seeking to support such will must show by affirmative evidence that the testator was of sound mind when he executed the will.

A party competent to make a valid will should possess

a mind capable of exercising judgment, reason, and deliberation, a mind capable of weighing the consequences of his will and its effects to a certain degree upon his estate and family, and all persons devoid of such reason are incompetent to make a valid will.

Both of these instructions have received the approval of this court. *Bales v. Bates,* 27 Iowa, 110; *In re Evans' Estate,* 114 Iowa, 240. And, furthermore, the court in other instructions clearly told the jury that the contestants must prove mental incapacity to make the will by the weight of the evidence. Instruction six follows substantially the language of an instruction approved in the eighth paragraph of the opinion in *Howe v. Richards,* 112 Iowa, 220.

10. WILLS: mental capacity: presumption: burden of proof.

The objection to the seventh instruction is that it fixed too high a standard of mental capacity. It is, however, in almost the exact language of an instruction approved in the fourth paragraph of the opinion in *Meeker v. Meeker,* 74 Iowa, 352, and the substance of which was again declared to be the rule in *Perkins v. Perkins,* 116 Iowa, 253. Criticism of the eighth instruction is unjust because similar instructions were approved in *In re Winslow's Estate,* 146 Iowa, 67, and in *Garretson v. Hubbard,* 110 Iowa, 7. The tenth instruction is in the exact language of one approved in *Stephenson v. Stephenson,* 62 Iowa, 163. The substance of instruction fifteen given by the court was embodied in a request of the appellants, and they can not complain thereof. Instruction seventeen on the question of the unreasonableness of the will followed the rule in *Manatt v. Scott,* 106 Iowa, 203, and instruction eighteen was requested by appellants. The instructions are criticised as a whole on the ground that they are conflicting and confusing. We have given the instructions, singly and as a whole, careful examination and consideration, and we are impressed with the care manifest in their preparation and the clear-

11. SAME: measure of capacity.

ness with which they presented to the jury the sole issue it was to determine.

While the contestants alleged undue influence and want of testamentary capacity, only the latter question was allowed to go to the jury, and the appellants now contend with a great deal of force that the evidence as a whole is insufficient to sustain the finding of the jury. The question is not entirely free of doubt; but a separate and painstaking examination of the entire evidence submitted to the jury leads us to the conclusion that it gives such support to the verdict as to require an affirmance of the finding.

We find no error requiring or permitting a reversal of the judgment, and it is therefore *affirmed*.

EVANS, J., took no part.