In Re ESTATE OF ANDREW LAW, Deceased, MARY LAW and FRANK LAW, Appellants, v. ANNA JONES, MARGARET ELLIOT and SADIE BURNS, Appellees.

Wills: CONTEST: MENTAL CAPACITY: EVIDENCE. In this will contest
1 on the ground of mental incapacity, the evidence is held sufficient to take the question of testators incapacity to the jury, and to support a finding that he was mentally incompetent when the will and codicil were executed.

**Same:** APPEAL: REVIEW OF VERDICT. Where there is substantial evidence in support of the finding that testator was mentally incompetent to make a will, the appellate court will not disturb the verdict on the ground of passion and prejudice.

**Same:** NON-EXPERT EVIDENCE. A non-expert witness may give his opinion of the mental condition of a testator, when based upon and limited to the facts first detailed by him, and which are sufficient to justify an inference of insanity.

**Same:** MENTAL CAPACITY: INSTRUCTION. A testator must have had sufficient strength of mind to know and comprehend the nature and extent of his property, the objects of his bounty, and the distribution he desired to make of his estate. The instruction in this case conforms to this rule.

**Same:** OPINION EVIDENCE: WEIGHT: INSTRUCTION. The weight to be given the evidence of expert and non-expert witnesses, as to the mental unsoundness òf a testator, is a matter peculiarly within the judgment and discretion of the jury, after they have first determined whether the facts testified to by the witness are consistent with unsoundness of mind, and whether the facts recited in the hypothetical questions to the experts have been established by the evidence. ·The instruction on the subject as given by the court in this case was correct.

**Same:** REQUESTED INSTRUCTIONS. Refusal of a requested instruction, substantially covered by that given by the court, is not ground for complaint; nor was the refusal of a correct requested instruction, to the effect that the opinions of non-experts, testifying to the unsoundness of mind of testator, need not be based on detailed facts and circumstances but only on acquaintance and opportunity for observation, reversible error; the court having admitted such evidence and thus given effect to the rule, and having directed the jury to consider all the evidence in determining the issue.

**Same:** MENTAL CAPACITY: EVIDENCE. Evidence of the mental and physical condition and habits of the executors named in a will is admissible, as bearing on the mental condition of the testator.

*Appeal from Polk District Court.*—HON. JAMES P. HEWITT,
Judge.

WEDNESDAY, NOVEMBER 20, 1912.

THIS is a contest over what purports to be the last will and testament of Andrew Law, deceased. The will was exe-

cuted in April of the year 1903, and a duly executed codicil was attached some time in the year 1909. Contestants claimed that testator was unsound of mind at the time both will and codicil were executed, and also that the execution thereof was brought about by undue influence. The case was tried to the jury upon the issue of mental capacity; the issue of undue influence having been withdrawn by the trial court. The jury returned a general verdict for contestants, and also in answer to special interrogatories found that testator was of unsound mind and mentally incompetent when the will was executed, and also at the time of the execution of the codicil. Proponents appeal.—*Affirmed*.

*Bowen & Alberson* and *A. B. Schuetz*, for appellants.

*C. L. Nourse* and *R. G. Patton*, for appellee.

DEEMER, J.—I. At the time of the execution of the will testator was about seventy-one years of age, and the codicil was executed about six years thereafter. He died in Feb-

1. WILLS: contest: mental capacity: evidence.

ruary of the year 1910 at the age of seventy-eight years. It is claimed that he was unsound of mind at the time of the execution of both will and codicil, and testimony was adduced to show that he was afflicted with *senile dementia*. As the chief point made by appellant for a reversal is the insufficiency of the testimony to take the case to the jury, and to sustain the verdict returned, we have concluded to adopt the state of facts recited in a hypothetical question put to the experts as a basis for the discussion of this proposition. It is as follows:

Q. Doctor, we want your opinion as to the probable malady and mental soundness or unsoundness of a man who, at the age of about seventy-two years or seventy-three years, executed a written instrument, the validity of which is in controversy in this suit. About ten years prior to the execution of the instrument this man had a severe illness lasting about

six weeks; the illness coming upon him suddenly in corn-husking time and while he was working unusually hard. During the early part of the illness he was unconscious at times; his mind wandering. After the illness he walked for a time with a cane, and then with a crutch and cane, and then in later years upon crutches—two crutches—his shoulders drooped; his back was greatly bent forward, almost double; he carried his head bent; he dragged his feet as he walked; he had difficulty in getting about; he complained of headaches and of dizziness; he was at times melancholy and despondent. These conditions grew worse up to the time of his death which occurred in February, 1910. After his illness he never worked except at times for a short period doing small chores; his general health was bad; he suffered pain in various parts of his body; he was physically weak and infirm; his joints were stiff, his arteries hardened, his hands shrunken and they trembled when he attempted to use them for ordinary purposes; his vision was impaired; his hearing was impaired. Prior to his illness he had always been a strong man, upright in carriage, good health, self-reliant. After the illness he was physically as above described; he was childish, pessimistic as to his health, fretful, querulous, was restless, would wander around his premises and amongst his stock in the nighttime in his barnyard, would frequently worry over immaterial matters, and he would sit in his chair and whisper, mumble to himself, and would talk to himself and among his stock, and to his stock when he was among them, and although he was a man worth $40,000, neighborhood of $40,000 unincumbered property, he would worry over poverty, probably the poorhouse would be his end. He was forgetful, and asked questions and soon after repeat them, would miscall names, would tell foolish stories, sing foolish songs, and a few weeks before he executed the instrument in question his sister died, and it became necessary for him to make a sworn statement of his heirs, which consisted of his and her brothers and sisters and a nephew and niece, and he gave his own name and names of nephew and niece as the only heirs of the deceased sister, forgetting the names of two brothers and three sisters who were equal heirs with himself and entitled to a portion of the estate. His sister left a watch, and immediately after the funeral he took it and gave it to a grandchild. The parents of the grandchild told her she was not entitled to it; that her grandfather had no

right to give it to her; and she returned it to him and he became provoked—said he did have a right to give it.

This is a fairly accurate statement of what the testimony offered for contestants tended to show. And we may here pause long enough to say that the ruling on the objection to this question was correct, for there was sufficient testimony upon which to base it. *Meeker v. Meeker*, 74 Iowa, 357.

The answer made by the expert to the direct question of whether or not, assuming the facts stated to be true, testator was sound or unsound of mind was that

2. Same: appeal: review of verdict.

he was of unsound mind. Of course this answer is not binding either upon us or the jury, but we may and should view the testimony in the light of the opinion of both experts and nonexperts. Assuming that the jury accepted this testimony as true, notwithstanding the testimony introduced by proponents which tended to show sanity, and conceding that to our minds this testimony overcame the showing made for contestants, we yet have to consider the verdict as a verity, unless the testimony be such as to indicate passion or prejudice on the part of the jury, and this we cannot do unless there be no substantial evidence in support of the verdict. *Bever v. Spangler*, 93 Iowa, 576; *Sheffield v. Hanna*, 136 Iowa, 579; *Nutter v. Insurance Co.*, 156 Iowa, 539; *Betts v. Betts*, 113 Iowa, 115; *In re Hannaher's Will*, 155 Iowa, 73. Manifestly there was such a showing here on behalf of contestants that we are not justified in interfering.

II. Various nonexpert witnesses were permitted to give their opinion as to testator's unsoundness of mind. This they

3. Same: nonexpert evidence.

did upon facts stated by them, and these opinions were properly limited to a state of facts to which they had given testimony. In this there was no error. *Stutsman v. Sharpless*, 125 Iowa, 335; *Barry v. Walker*, 152 Iowa, 154; *Betts v. Betts*, 113 Iowa, 118. It is

said, however, that in some instances the facts related were
not sufficient, in themselves, to indicate insanity, and that the
trial court should have sustained objections calling for these
opinions on the facts so recited. Ordinarily, if there be any
facts which would justify an inference of insanity, the wit-
ness is permitted to answer, and the value of the opinion is
for the jury. *Barry v. Walker,* 152 Iowa, 154; *Betts v. Betts,*
113 Iowa, 118. Of course if no facts are recited which tend
to show unsoundness of mind, the court should not permit
the witness to give an opinion, but, in case reasonable minds
might differ on the proposition, the witness should be al-
lowed to answer, and the whole matter should go to the jury,
which is the final arbiter of the facts in every case. In the
light of these rules, we have examined the record upon each
and all of the rulings complained of and find no error. *Stuts-
man v. Sharpless,* 125 Iowa, 335.

III. The trial court gave the following, among other,
instructions:

(6) A person of sound mind—that is, one who has suffi-
cient mental capacity to make a valid will—within the mean-
ing of the law in this case, is one who has *full and intelligent
knowledge* of the act he is engaged in, a *full* knowledge of the
property he possesses, and intelligent perception and under-
standing of the disposition he desires to make of it, and of the
persons he desires shall be the recipients of his bounty, and
the capacity to recollect and comprehend the nature of the
claims of those who are excluded from participating in his
bounty; but it is not necessary that he should have sufficient
capacity to make contracts and do business generally, nor to
engage in complex and intricate business matters. If the
testator had an intelligent knowledge of the nature of the
instrument he was executing, and sufficient intelligence and
strength of mind to know and comprehend the natural objects
of his bounty, the nature and extent of his estate, and the dis-
tribution he wished to make of his property, he had sufficient
mental capacity to make a will.

The italicised parts of the instruction are complained of. The instruction is fully approved in *Meeker v. Meeker,*

4. SAME: mental capacity: instruction. 74 Iowa, 352, and we have never departed from the rule there announced. Taken as a whole, the words complained of are so modified and explained that the instruction as an entirety does not run counter to the rules expressed *In Re Evans' Estate,* 114 Iowa, 240, and *Perkins v. Perkins,* 116 Iowa, 253. Of course complete and perfect knowledge in the broadest sense is not required; but testator must have had strength of mind enough to know and comprehend the nature and extent of his property, the objects of his bounty, and the distribution he desired to make of his estate. This is what the court instructed, and there was no error.

IV. The following instruction is also complained of:

(13) Testimony has been given in this case consisting of opinions of nonexpert witnesses as to the unsoundness of mind of the testator, Andrew Law, and in relation thereto said

5. SAME: opinion evidence: weight: instruction. witnesses have testified to certain facts and circumstances which they claim to have observed as to the acts, appearance, and conduct of said Andrew Law both before and after the times of the execution of the said will and the codicil thereto. The law requires the opinion of such witnesses to be based upon facts which are given in evidence and detailed to the jury by said witnesses before giving said opinion, and it is for you to say what weight is to be given to such opinion of any such witnesses after first determining whether the facts and circumstances testified to by him and detailed to the jury upon which said opinion is based, are consistent with unsoundness of mind as elsewhere defined in these instructions. With such limitation, the weight to be given the opinions of witnesses, both expert and nonexpert, is a matter peculiarly within your sound judgment and discretion, and you should consider, in connection therewith, the facts disclosed by those witnesses who have given opinions of unsoundness of mind, based upon their observations of the deceased as detailed in evidence, and also whether or not the facts enumerated in the hypothetical questions propounded to expert witnesses have

been established by the evidence offered and admitted upon the trial.

This instruction has ample support in the cases.

V.   Proponents asked the court to give two instructions, which we here quote:

(20) Evidence has been introduced in this case tending to show that Andrew Law, deceased, at the time of the making of the will in controversy involved in this action, was afflicted with a mental disease known as *senile dementia*. The fact that Andrew Law was afflicted with such disease, if you find from the evidence that it is a fact, does not necessarily mean that Andrew Law was by reason thereof incapable of making the will and codicil in controversy. A person may be insane or unsound in mind on some subjects, and be perfectly sane or sound as to others. The law is that, in order to defeat the will and codicil in this action, Andrew Law, deceased, must have been mentally incompetent to transact the very business in question, to wit, the making of the will and codicil; and if you find with reference to making such will and codicil, at the time of the making thereof, he was competent to understand, without prompting, the nature and extent of his property, the distribution he desired to make thereof, the proportionate shares he wished to make descend to those he wished to make the recipients of his bounty, and was capable of understanding who were the natural objects of his bounty, then, and in that event, your verdict will be for the proponents.   (14) Testimony has been given in this cause consisting of opinions of law or nonexpert witnesses as to the unsoundness of mind of the testator, Andrew Law. In this connection you are instructed that such testimony, to be of any value must be based and based alone on facts and circumstances detailed by such witnesses to you while on the stand, showing or tending to show indications of mental unsoundness.   On the other hand, opinion evidence of witnesses testifying as to the soundness of mind of the testator, Andrew Law, need not be based upon any detailed facts or circumstances given by the witness giving testimony as to such soundness, but only upon acquaintance and opportunity for observation.   In determining what weight you shall give to

*6. SAME: requested instructions.*

the opinions of lay or nonexpert witnesses testifying to the
unsoundness of mind of the testator, Andrew Law, you are
to take into consideration what facts upon which such wit-
ness bases his opinion, and those only, and give to such opin-
ion such weight as you may deem them entitled to.

The substance of the first of these instructions was given
by the court in its charge, and proponents have no just
ground for complaint. The second announces a correct rule
of evidence, and no specific instruction was given with ref-
erence to this matter. However, the court admitted such
testimony, thus in effect announcing the rule of the requested
instruction, and further directed the jury to consider all the
testimony adduced in determining the issue submitted. We
are constrained to hold that no prejudicial error resulted
from the court's failure to give the second of the foregoing
requests. The instruction with reference to the opinions of
nonexperts who gave their opinions as to testator's insanity
was correct, and such an instruction, although relating some-
what to rules of evidence, was a proper one. and one favor-
able to proponents.

VI.   Although a little out of order, we shall here con-
sider some minor matters complained of.   Contestants were
permitted, over objections from proponents,
to show that testator's widow could not read
or write, and also that Frank Law, one of the
proponents and main devisees under the will, was addicted
to drink.  Frank Law, and his mother, Mary Law, were named
as executors of the will, and it is claimed that the testimony
was admissible as bearing upon testator's strength of mind;
the thought being that the parties named as executors were in-
competent to act as such, which testator would have known
and realized had he been of sound mind.  For this purpose
the testimony was admissible.  In this connection the trial
court gave the following instructions: "(14) Testimony has
been given in this case relating to the habits of Frank Law,
one of the proponents in the case and named as executor in

7. SAME: mental
   capacity evi-
   dence.

the will in controversy herein, with reference to his use of intoxicating liquors. You are instructed that this testimony has been admitted for the purpose of showing the relations existing between Frank Law and the deceased, Andrew Law, and as bearing upon the mental condition or capacity of the deceased testator, Andrew Law. Standing alone, such testimony is not evidence of mental incapacity, but the same may be considered by you in connection with all the other evidence admitted upon the trial bearing upon that question.'' Moreover, testimony as to the habits of Frank Law was admissible, as also was testimony as to the character and habits of all the other children and heirs of the testator, in determining testator's state of mind and the nature of the bounty he gave by his will. In order to judge of the nature of the will, it was important for the jury to know each and all of these matters.

VII. It is said that nonexperts as to unsoundness of mind were not confined in the questions propounded to the testimony given by them with reference to testator's conduct. An examination of the record discloses that this is a mistake. The trial court exercised great care in this matter, and we discover no error. Proponents offered the records and files of the Polk county district court, in the case of *Doubleday v. Burns,* for the purpose of explaining a matter referred to by some of the witnesses for contestants. This testimony might very well have been received; but, as the matter sought to be shown thereby was practically an admitted fact, no prejudice resulted from the ruling excluding them.

Having gone over the record with great care and found no prejudicial error, it follows that the judgment must be, and it is, *Affirmed.*